# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1903 | **DATE** | 12/2/2004 |
| **CASE TITLE** | United States of America for the Use and Benefit of James Cape & Sons Company vs. American Home Assurance Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendant's motion to dismiss [#84] is denied. Defendant's motion to strike plaintiff's affirmative defenses [#85] is granted in part and denied in part. Plaintiff's Affirmative Defense of estoppel is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 8 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | DEC 0 3 2004 | |
| ✓ | Notices mailed by judge's staff. | | date docketed | 108 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 12/2/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the Use and Benefit of JAMES CAPE & SONS COMPANY, a Wisconsin Corporation, | ) ) ) ) | DOCKETED<br>DEC 0 3 2004 |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 1903<br>Judge Joan H. Lefkow |
| AMERICAN HOME ASSURANCE CO., a New York corporation, et al., | ) ) ) | |
| Defendants and Third Party Plaintiff. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintff/third-party defendant, James Cape & Sons Company ("Cape"), filed an Amended Complaint under the Miller Act, 40 U.S.C. § 3131, against defendant/third-party plaintiff, American Home Assurance Company ("American Home"), seeking payment for work performed under a payment bond issued by American Home. Cape also claims that American Home breached an indemnity agreement executed by the parties and acted negligently or in bad faith by failing to act to insure Cape and other subcontractors would be paid for work performed. A number of these other subcontractors also filed claims against the payment bond. American Home consolidated these suits and filed a counterclaim against all known bond claimants, including Cape, seeking a determination of each claimant's rights, if any, against the payment bond. In addition, American Home filed a Third-Party Complaint against Cape seeking an order requiring Cape to indemnify American Home from all claims against the payment bond. Cape filed its answer and affirmative defenses to American Home's indemnity complaint. Before the

108

court are American Home's motions to dismiss Cape's Amended Complaint and to strike Cape's affirmative defenses to American Home's Counterclaim and Third-Party Complaint. For the reasons stated below, the court denies American Home's motion to dismiss and grants in part and denies in part American Home's motion to strike Cape's affirmative defenses.

## BACKGROUND

On or about July 22, 1999, Bowles Construction Services, Inc. ("Bowles") entered into a contract with the United States Army Corps of Engineers ("Army") to perform certain construction improvements on a project commonly referred to as the Chicago Shoreline Improvements in Chicago, Illinois (the "Project"). Pursuant to its contract with the Army and the Miller Act, 40 U.S.C. § 3131, Bowles was required to obtain a performance bond guaranteeing its performance of its obligations under the contract and a payment bond guaranteeing Bowles' payments to persons or entities providing labor or materials to the project.

On or about August 25, 1999, Bowles and Cape entered into a written subcontract whereby Cape agreed to perform certain work on the Project. To assist Bowles in obtaining the payment bond for the Project, Cape requested that American Home issue the payment bond on behalf of Bowles. To secure issuance of the payment bond, Cape, Curkeet Services, Inc., Cape Brothers Realty & Equipment Co., Christopher C. Cape, W. Robert Cape, William R. Cape, and Amy Cape (collectively, the "Cape Indemnitors") executed a General Contract of Indemnity ("Indemnity Agreement") for the benefit of American Home. The Indemnity Agreement provided that Cape would "save harmless and indemnify" American Home "from and against any and all liability, loss, damages, costs, counsel and attorney fees . . . which it or they shall or may at any time for any cause incur, sustain or be put to for or by reason or in consequence of

2

executing any of the said bonds or suretyship instruments." In the Indemnity Agreement, Cape also assigned American Home, among other things, Cape's rights and claims arising out of its subcontract with Bowles for the Project. Additionally, Cape granted American Home a power of attorney to execute and perform all acts under the Cape/Bowles subcontract "including . . . making demand and bringing suit therefor in its, or his or their names, at its option, and settling and compromising the same." American Home then executed and provided a payment bond pursuant to the Miller Act, 40 U.S.C. §§ 270(a)-(d), in the amount of $2,500,000 (the "Payment Bond").

Beginning in or around August, 2000, Bowles ceased to pay Cape for its labor or materials, except for two miscellaneous fund transfers. Despite not paying Cape, Bowles continued to submit pay applications to the Army for reimbursement and continued to receive payment for Cape's work. Cape notified American Home of Bowles' failure to pay and requested American Home to intercede with Bowles to compel Bowles to make payments to Cape. Cape thereafter advised American Home that Bowles had falsely certified and was continuing to falsely certify its applications for payment to the Army by certifying that it was making and had previously made payments to subcontractors from payments received by Bowles from the Army when it was not and had not. Cape advised American Home that, instead of paying Cape, Bowles was dissipating corporate funds for purposes such as "casino gambling sprees, strip club charges, personal expenses and payments to entities affiliated with its principals." (Am. Compl. ¶ 24.) Cape also advised American Home that further payments would be forthcoming to Bowles from the Army and requested that American Home intercede to insure

Cape's payment under the subcontract. Cape claims that, instead of interceding, American Home encouraged or acceded to the Army's payment of the remaining funds in the contract to Bowles.

On February 21, 2001, Cape filed against Bowles a Demand for Arbitration with the American Arbitration Association to resolve the dispute arising out of Bowles' failure to pay Cape. The arbitrators found in favor of Cape and awarded compensatory damages, equitable remedies, and attorneys' fees in the amount of $2,560,279.62. On June 21, 2002, the Circuit Court of Cook County, Illinois confirmed the arbitration award, which was subsequently modified in other respects on October 21, 2002. To date, Bowles has failed to pay.

On March 15, 2002, while the matter between Cape and Bowles was pending in state court, Cape filed its initial Complaint against American Home seeking payment for its work on the Project under the Payment Bond. Between April 24, 2002, and November 26, 2002, several other subcontractors filed claims against the Payment Bond. Since the total sum of the pending claims against the Payment Bond exceeded the total limit of American Home's exposure of $2,500,000, American Home consolidated several of the suits and filed a counterclaim against all known Bond claimants seeking a determination of each claimant's rights, if any, against the Payment Bond. In addition, American Home filed a Third Party Complaint against the Cape Indemnitors seeking an order requiring the Cape Indemnitors to indemnify American Home from all claims against the Payment Bond. On September 17, 2002, Cape filed its answer and affirmative defenses to American Home's indemnity complaint.

On May 28, 2004, Cape filed an Amended Complaint against American Home, adding counts for breach of contract and negligence or bad faith.

## DISCUSSION

American Home moves to dismiss Cape's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. American Home also moves to strike Cape's Affirmative Defenses to American Home's Counterclaim and Third-Party Complaint.

### A. American Home's Motion to Dismiss

American Home argues that Cape's Miller Act claim against the Payment Bond (Count I) should be dismissed because either (a) Cape's claim is void because Cape must indemnify American Home for Cape's own claim; (b) if Cape's claim is later found to be valid, American Home would be entitled to recover for Cape's claim directly from Cape; or (c) American Home can exercise its right of set off (indemnification by Cape) against Cape's Bond claim. American Home also argues that Cape has failed to plead the requisite elements for breach of contract (Count II) and bad faith or negligence (Count III). For reasons that will become apparent, the court will address American Home's arguments regarding Counts II and III before proceeding to Count I.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all

reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

**I. Counts II and III**

Counts II of Cape's Amended Complaint alleges that American Home breached its duty of good faith and fair dealing under the Payment Bond and the Indemnity Agreement by "failing, in a timely, adequate and good faith manner, to investigate, process and intercede to prevent further continuing defaults by Bowles and losses to Cape." Count III alleges that American Home, by essentially the same actions, breached its duty, as an indemnitee and payment bond surety, to act without negligence, bad faith or in a way that would prejudice the rights of Cape, as bond claimant and indemnitor.

American Home makes three arguments in support of its motion to dismiss Counts II and III. First, American Home asserts that any actions it could have taken to intercede to prevent further defaults by Bowles and losses to Cape would have subjected American Home to liability from Bowles. Second, American Home argues that it had no right to take any such actions, because the Army has the discretion to make payments to a contractor with financial problems. Finally, American Home argues that Cape has failed to plead that American Home's actions were either unreasonable, arbitrary, capricious, or otherwise not in a manner consistent with the reasonable expectations of the parties.

First, American Home argues that any action it could have taken to intercede would have subjected it to liability from Bowles, because Bowles had not been declared in default by the Army. American Home contends that a surety "cannot take action and intervene with the principal's contractual rights until the obligee has triggered the surety's bond obligations by

6

declaring the principal in default or terminating the principal. If a surety takes any action prior to the surety's bond obligations being triggered, the surety will be potentially liable for interfering with the principal's contract with the obligee." (Memo. in Supp., at 9.) In support of this argument, American Home cites *L&A Contracting Co. v. Southern Concrete Service, Inc.*, 17 F.3d 106 (5th Cir. 1994), and *Lambert v. Maryland Cas. Co.*, 403 So.2d 739 (La.Ct.App. 1981). Neither of these cases supports American Home's argument. In *L&A Contracting*, the court held that a surety's liability to a contractor under a performance bond is not triggered until the contractor declares the subcontractor to be in material breach of the subcontract. 17 F.3d at 110. The court makes no mention of the surety's potential liability for actions taken to protect its interests before such a declaration. The holding in *Lambert*, moreover, is precisely the opposite of American Home's proposition. There, the court upheld the right of a dual-obligation payment and performance bond surety to notify the Louisiana Department of Highways and other public agencies of the surety's claim to payments due to an insolvent contractor prior to the formal recordation of the contractor's default. The court cited approvingly numerous cases holding that "exposure to claims under payment obligation of a public works bond is sufficient in itself to justify a surety's notification to the owner under a public works contract of its interest in the contract balances." 403 So.2d at 753-54 (citing, *inter alia*, *Gerstner Elec., Inc. v. American Ins. Co.*, 520 F.2d 790 (8th Cir. 1975) (holding that a surety, after becoming aware of a single claim for labor and materials by a subcontractor, acted reasonably by directing the owner to withhold further payments from the contractor even though contractor had not been declared in default by the owner); *American Fidelity Fire Ins. v. United States*, 513 F.2d 1375 (Ct. Cl. 1975) (holding that the United States was liable to a surety under a Miller Act payment bond for payments made

7

to a contractor after the United States received notice from the surety that the contractor was in default or was about to be in default in paying subcontractor)). American Home has failed to cite a single case of a payment bond surety being subjected to liability from its principal for interceding in the principal's contract with the obligee before the obligee declared the principal in default. Thus, American Home's motion to dismiss on this ground is denied.

Second, American Home argues that it had no right to take any action with the Army, because the Army has the discretion to make payments to a contractor with financial problems. American Home is correct that the Army had the discretion to make payments to Bowles despite American Home's objections. *See Argonaut Ins. Co. v. United States*, 434 F.2d 1362, 1367-68 (Ct. Cl. 1970) (holding that the Government has discretion, despite a surety's objection, to make payments to a contractor with financial problems as long as it follows its own procurement regulation); *United States v. Continental Casualty Co.*, 346 F.Supp. 1239, 1243 (N.D. Ill. 1972) (holding that *Argonaut*'s discretionary standard applies to the Government in withholding progress payments at the request of the surety). This does not mean, however, that American Home could sit idly by while the Army continued to pay Bowles. The Army had a "duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract." *Argonaut*, 434 F.2d at 1368. The Army's duty to consider American Home's interest gave rise to a concomitant duty on the part of American Home, as Cape's indemnitee, to make its interest known to the Army. American Home seems to recognize this, and argues that it "did in fact notify the Army that Bowles had financial problems and that American Home objected to the Army releasing payment to Bowles." (Reply, at 5-6.) However, these alleged actions by American Home are not mentioned in Cape's

Amended Complaint, and American Home has not attached any documents verifying those actions to its motion to dismiss (which would allow the court to convert American Home's motion to dismiss into a motion for summary judgment, *see R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003)). Thus, American Home's motion to dismiss on this ground is denied.

Finally, American Home argues that Cape has failed to plead that American Home's actions were either unreasonable, arbitrary, capricious, or otherwise not in a manner consistent with the reasonable expectations of the parties. First, American Home again recites the actions it claims it took with the Army, arguing that these actions demonstrate that American Home did not act in bad faith. However, as explained above, none of those actions are mentioned in Cape's Amended Complaint. The Amended Complaint only alleges that American Home "acted negligently or in bad faith when it failed to investigate, process and intercede in a timely, good faith manner" (Am. Compl. ¶¶ 33-36) and instead "encouraged or acceded to the Government's payment of the remaining funds in the contract to Bowles and others by joint checks or otherwise, which arrangement excluded Cape from any payments . . . ." (*Id.* ¶ 36.) These allegations are sufficient to state a claim for negligence and/or bad faith.

American Home's second argument is somewhat muddled. First, American Home argues that a payment bond surety is only subject to liability for vexatious delay in investigating a claim, *citing* 215 ILCS 5/155. However, American Home fails to cite any authority supporting the assertion that section 155 is the only basis for a surety's liability under a payment bond, and the court's own research reveals none. American Home continues, "Cape is unable to plead any set of facts that meet the requisite legal standards to support its claims for Breach of Contract and

9

Bad Faith." (Memo. in Support, at 13.) However, Cape is not required to plead facts. Pleading in federal court is governed by Rule 8 of the Federal Rules of Civil Procedure. Unlike Illinois' fact-pleading requirements, Rule 8 requires only notice pleading, that is, "a short and plain statement of the claim." *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 761, 764 (7th Cir. 1999) ("The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories."); *Sanyo Laser Prod., Inc. v. Royal Ins. Co. of America*, 2003 WL 23101793, at * 5 (S.D. Ind. Nov. 7, 2003)(notice-pleading standard applies to allegations of bad faith). Cape has clearly met this requirement. Thus, American Home's motion to dismiss is denied as to Counts II and III.

## II. Count I

Count I of Cape's Amended Complaint is a Miller Act claim seeking payment under the payment bond issued by American Home. American Home moves to dismiss this claim, arguing that either (a) Cape's claim is void because Cape must indemnify American Home for Cape's own claim; (b) if Cape's claim is later found to be valid, American Home would be entitled to recover for Cape's claim directly from Cape; or (c) American Home can exercise its right of set off (indemnification by Cape) against Cape's Bond claim. Cape argues in response that the indemnification agreement is void because it violates public policy.

Assuming *arguendo* that the indemnity agreement is valid, American Home is correct that Cape's claim is essentially a claim against itself. Under Illinois law, there is a "presumed identity of interests between [an] indemnitor and indemnitee." *Cowan v. Ins. Co. of North America*, 318 N.E.2d 315, 321 (Ill. App. 1st Dist. 1974). Thus, Cape is legally interested in each side of the action. This is not permitted under Illinois law. *See McElhanon v. McElhanon*, 62 Ill.

457 (1872) ("It is an answer to an action that a party is legally interested in each side of the question. A party cannot be both plaintiff and defendant in an action."); *City of Chicago v. Board of Education of the City of Chicago*, 246 Ill. App. 405 (Ill. App. 1st Dist. 1927) (A party with a "substantial interest in the defense" may not prosecute an action.); *see also Siler v. Northern Trust Co., Inc.*, 80 F.Supp.2d 906, 908 (N.D.Ill. 2000) (applying Minnesota law and holding, "A circuitry of obligation will defeat a plaintiff's claim as a matter of law. A circuitry of obligation is created when, by virtue of pre-existing indemnity agreements or obligations, the plaintiff is in effect obligated to indemnify the defendant for claims including the plaintiff's own claim.").

Cape's only response is to argue that the Indemnity Agreement is void as a matter of public policy. Cape correctly points out that the Miller Act is "entitled to a liberal construction and application in order to properly effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. McEvoy Co. v. United States ex rel. Calvin Tompkins Co.*, 322 U.S 102, 107 (1944). From this, Cape concludes that to deny its right to recover under the payment bond would violate the clear purpose of the Miller Act. However, Cape was not just a subcontractor on the Project; it was also American Home's indemnitor, a role Cape voluntarily assumed to insure that American Home would issue payment bonds on behalf of Bowles. In doing so, Cape assumed the risk that Bowles would not pay its subcontractors. Cape cannot now escape its responsibility to indemnify American Home by claiming the protection of the Miller Act.

In support of its argument, Cape cites *Cal's A/C and Electric v. Famous Constr. Corp.*, 982 F. Supp. 1219 (W.D. La. 1997). This case is inapplicable here. *Cal's A/C* addresses the

validity of a venue selection clause in a subcontract. The defendant contractor sought to dismiss the subcontractor's case for improper venue or to transfer the case to the court specified in the subcontract's venue selection clause. The court denied the defendant's motion, holding that the Miller Act "lays exclusive, non-waivable venue in the federal district court in which the project is located." *Id.* at 1219 (citing 40 U.S.C. § 270b ("Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere.")). In contrast, nothing in the Miller Act prohibits a subcontractor from indemnifying a surety in return for the surety issuing payment bonds to the contractor, and the court sees no reason why public policy would forbid a subcontractor from doing so. While the Miller Act is intended to protect subcontractors, there is a strong public policy favoring freedom of contract. *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1101 (7th Cir. 2003). Thus, the court holds that the Indemnity Agreement does not violate public policy.

This, however, does not resolve the matter. Cape alleges in Count II that American Home breached the Indemnity Agreement. Under Illinois contract law, a material breach by one party to a contract discharges the other from performing its obligations under the contract. *Kel-Keef Enters. Inc. v. Quality Components Corp.*, 738 N.E.2d 524, 537 (Ill. App. 1st Dist. 2000). Thus, if Cape succeeds in proving that American Home breached the indemnity agreement, it would be discharged from its obligation to indemnify American Home for claims against the payment bond. Consequently, Cape would no longer be legally interested in both sides of the action and could pursue its claim for payment under the payment bond. Thus, the court denies American Home's motion to dismiss Count I.

### B. American Home's Motion to Strike Cape's Affirmative Defenses

On May 14, 2004, this court granted in part Cape's motion for leave to file an amended complaint and consolidated and amended affirmative defenses adding counts and affirmative defenses of breach of contract and bad faith. Cape now asserts the following affirmative defenses:

> 30. American Home's claims are barred by waiver and estoppel.
> 31. American Home's claims are barred on the grounds of payment.
> 32. American Home's claims are barred to the extent that the claims are offset by competing claims.
> 33. American Home's claims are barred by lack of legal entitlement.
> 34. American Home's claims are barred due to its breach of its contractual duty of good faith and fair dealing.
> 35. American Home's claims are barred because it acted in bad faith by failing to mitigate the claims against the payment bond.

American Home moves to strike Cape's Amended Affirmative Defenses.

Because affirmative defenses are pleadings, they are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989). Therefore, affirmative defenses must set forth a "short and plain statement" of the defense. Fed.R.Civ.P. 8(a). The court evaluates a motion to strike affirmative defenses under Rule 12(f), which provides "upon motion made by a party before responding to a pleading . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Motions to strike are not favored, and affirmative defenses will only be stricken when they "are patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc.*, 864 F.Supp. 726, 732 (N.D.Ill.1993). Defenses should, however, be stricken when their effect is to add

unnecessary clutter to a case. *Heller Fin., Inc.* v. *Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1295 (7th Cir.1989).

As in its motion to dismiss, American Home seems to misunderstand the pleading requirements of Rule 8(a). American Home repeatedly argues that Cape's affirmative defenses should be stricken because Cape fails to allege "any facts supporting its defense." Again, Cape does not have to allege facts. *See Kirksey*, 168 F.3d at 764; *see also Hoskins* v. *Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)("The complaint does not contain all of the facts that will be necessary to prevail, but a filing under Rule 8 is not *supposed* to do that.")(emphasis in original). Cape need only set forth a "short and plain statement" of the defense. It has done so. Thus, American Home's motion to strike Cape's affirmative defenses is denied as to paragraphs 31-35 and as to the defense of waiver in paragraph 30 of Cape's Amended Affirmative Defenses.

However, because an affirmative defense of estoppel is "premised on a showing of intentional deception or gross negligence amounting to constructive fraud, this defense (like fraud) requires a recitation of adequate factual underpinnings for considerations of the applicability of the doctrine; mere conclusions and puffery will not suffice."[1] *Household Financial Services, Inc.* v. *Northeastern Mortg. Inv. Corp.*, 2000 WL 816795, at *2 (N.D. Ill. Jun. 22, 2002). The elements of equitable estoppel in Illinois are (1) words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) knowledge by the party against whom estoppel is asserted at the time the representations were made that the representations were false, or that the representation was

---

[1] Though Cape pleads the affirmative defenses of waiver and estoppel in the same paragraph, the waiver defense does not require a heightened pleading standard. *See Household Financial Services, Inc.* v. *Northeastern Mortg. Inv. Corp.*, 2000 WL 816795, at *3 (N.D. Ill. Jun. 22, 2002).

14

made with gross negligence as to their truth; (3) the truth respecting the representations was unknown to the party asserting estoppel at the time the representations were made and when they were acted upon; (4) the party against whom estoppel is claimed must intend or reasonably expect that the representations or concealment would be acted upon by the party asserting estoppel or the public generally; (5) the party asserting estoppel must have relied upon the representation in good faith to its detriment; and (6) the party claiming the benefit of the estoppel would be prejudiced if the other party is permitted to deny the falsity of the misrepresentation or concealment. *Id.* (citing *Vaughan v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988)). Cape has failed to allege any specific acts of misrepresentation or concealment in which American Home engaged. Cape's only response is to claim that American Home "failed to disclose to Cape that it never intended to pay out a dime under the Payment Bond." (Resp., at 8.) This is clearly insufficient under the heightened pleading requirements. It fails to provide any details of this alleged concealment–the "who, what, when, where, and how" required by Rule 9(b). *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Thus, American Home's motion to strike Cape's affirmative defense is granted as to the defense of estoppel.

## CONCLUSION

For the reasons stated above, American Home's Motion to Dismiss is denied [#84]. American Home's Motion to Strike Cape's affirmative defenses is granted in part and denied in part [#85]. Cape's Affirmative Defense of estoppel is stricken.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 2, 2004

15